**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMES C.[1]                                               Case No. 2:25-cv-231

                    Plaintiff,                            Graham, J.
        v.                                                Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff James C. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.  *See* 42 U.S.C. § 405(g).  Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes.  As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

## I.  Summary of Administrative Record

On August 3, 2018, Plaintiff protectively filed an application for child's insurance benefits based on disability.  Plaintiff also filed an application for supplemental security income on December 23, 2019. In both applications, Plaintiff alleged disability beginning July 28, 2016. These claims were denied initially on October 30, 2020, and upon reconsideration on April 27, 2021. Thereafter, Plaintiff filed a timely written request for hearing and an administrative hearing, by video, was held on January 10, 2022.  At the hearing, Plaintiff represented by counsel, appeared and testified. (Tr. 54). Millie Droste,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.  *See* General Order 22-01.

an impartial vocational expert, also testified at the hearing. Further, the claimant's stepfather, Nicholas Randolf testified as a witness.  Thereafter on March 8, 2022, an ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled. (Tr. 22). Plaintiff filed a timely request for review of the ALJ's decision with the Appeals Council. By order dated January 27, 2023, the Appeals Council refused to review the decision of the ALJ and the ALJ's decision therefore became the final decision of the Commissioner.

Thereafter, Plaintiff filed a Complaint with this Court, however, before the Court entered its opinion, Plaintiff filed a subsequent application for SSI benefits on June 15, 2023. (Tr. 1251). The Court issued an Order dated March 26, 2024, remanding Plaintiff's case to the Commissioner for a new administrative hearing. (Tr. 1377). A new hearing was held with Administrative Law Judge Irma Flottman considering the entirety of Plaintiff's SSI claim. (Tr. 1258). The ALJ issued a new decision, again denying benefits to Plaintiff dated December 12, 2024. (Tr. 1215).

Plaintiff was born on February 4, 1996, and was 20 years old on his alleged onset date of disability.[2] He has a high school education and has no past relevant work.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments:

"Title II Child Disability Benefit (CDB) claim as of 2/4/2018 (age 22): learning disorder with specific impairment in mathematics and written expression; affective disorders; generalized anxiety disorder; history of attention deficit hyperactivity disorder (ADHD); schizophrenia; and intermittent explosive disorder (IED). Title XVI Protective

---

[2] To be entitled to CIB, a claimant who is 18 years or older must show that he is an insured person's child, is dependent on the insured, applied, is unmarried, and had a disability that began before 22 years old.  See 20 C.F.R. § 404.350

2

Filing Date (PFD) (reopening 8/2/2018): learning disorder; Generalized anxiety disorder; ADHD; personality disorder/IED; schizoaffective/schizophrenia disorder; and IED." (Tr. 1221). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform the full range of work at all exertional levels subject to the following limitations:

> Mentally, he is capable of work in an environment with goal-based production, where work is measured by the end result not pace work. He could perform simple, routine, repetitive tasks; would be allowed off task 5 percent of the day; could perform a low stress job, defined as occasional changes in work setting and occasional decision making required; could work in a setting where others maybe around, but he is more off by himself; could have no interaction with the public and only occasional interaction with coworkers and supervisors; and would require supervision where the supervisor checks work 1-2 times per day. (Title II CDB claim only).
>
> Concerning the Title XVI claim, he has the residual functional capacity to perform less than the full range of medium work except frequent balancing, stooping, kneeling, crouching, and climbing ramps and stairs; occasional crawling and climbing ladders, ropes and scaffolds. Mentally, he is capable of simple, routine, and repetitive tasks. He is able to work in an environment with goal-based production, where work is measured by the end result not pace work. His work would be allowed off task 5 percent of the day. He should have no interaction with the public and only occasional interaction with coworkers and supervisors. He could work in a setting where others may be around, but he is more off by himself. Further, he would require supervision where the supervisor checks work 1 -2 times per day. He would require a low stress job, defined as occasional changes in work setting and occasional decision-making required.

(Tr. 1225). Based upon his RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could not perform his prior work but could perform other jobs that exist in significant numbers in the national economy, including janitor, hand packager, and laundry worker. (Tr. 1241). Accordingly, the ALJ determined that Plaintiff is not under

disability, as defined in the Social Security Regulations, and is not entitled to CIB or SSI. (Tr. 1241).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by failing to properly evaluate the opinion of Dr. Rowland. Plaintiff's contention is not well taken.

### I.    Analysis

### A.  Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial

4

evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an

5

impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Decision is supported by Substantial Evidence

Plaintiff argues that the ALJ erred when evaluating the findings of consultative examiner, Susan Rowland, Ph.D. Specifically, Plaintiff contends that the ALJ failed to properly consider the supportability and consistency factors.  Plaintiff's contentions are not well-taken.

The new regulations for evaluating medical opinions are applicable to this case because Plaintiff's claim was filed after March 27, 2017. See 20 C.F.R. § 416.920c (2017). The new regulation at 20 C.F.R. § 416.920c differs from the previous regulation at 20 C.F.R. § 416.927 in several key areas. The agency no longer has a "treating source rule" deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a). Further, while the ALJ must articulate consideration of all medical opinions, the new regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. Compare 20 C.F.R. § 416.927(c)(2) with 20 C.F.R. § 416.920c(a), (b).

The ALJ is only required to explain how he or she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20

6

C.F.R. § 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other remaining factors in paragraphs (c)(3) through (c)(5) when articulating how he or she considered medical opinions. See 20 C.F.R. §§ 416.920c(b)(2)-(3).

> In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, supportability addresses whether a medical professional has sufficient justification for their own conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.).

Additionally, as a rule, an ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); see also *Wilson v. Com'r of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004) (holding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ existed to support the decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions

7

that he or she makes." *Bailey v. Com'r of Soc. Sec.*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999).

Here, in formulating Plaintiff's RFC, the ALJ considered the opinion of Dr. Rowland, a psychiatrist and mental consultative examiner.  Notably, Plaintiff was examined by Dr. Rowland on October 20, 2020, as part of his disability claim. (Tr. 793).  Dr. Rowland opined that Petitioner could understand, carry out, and remember simple instructions. (Tr. 805). Dr. Rowland opined next that he could sustain concentration and persist in work-related activities at a reasonable pace. Id. Dr. Rowland then opined that he may perform better at a job requiring limited interactions with people and the general public. (Tr. 806). Finally, Dr. Rowland opined that he may perform better where he has only limited contact with other coworkers and the public under a consistent, trusted supervisor accomplishing simple tasks with clear, simple instructions. Id. He would also benefit from learning coping strategies or being permitted to take additional short breaks. Id.

The ALJ found Dr. Rowland's opinions to be partially persuasive.  Namely, with respect to her opinion that Plaintiff required additional short breaks, the ALJ found that opinion to be unpersuasive. (Tr. 1237). The ALJ noted the opinion was vague, contingent, and speculative in nature. Id. The ALJ also found that the opinion was not supported by the record evidence which was "substantially normal" or "relatively normal" with no significant limitations noted in the record.  In this regard, the ALJ indicated that treatment notes showed that Plaintiff had logical cognition, had clear, coherent, and intact thought processes, was alert and oriented, and exhibited appropriate and intact attention and concentration. (Tr. 1230-1234, citing Tr. 503, 709, 802, 962-963, 965, 976, 1049, 1154). The ALJ also noted that Plaintiff was able to pursue activities he enjoyed such as playing

basketball, running, and playing video games, sometimes for up to 8 hours per day (Tr. 1235, citing Tr. 656, 923). As such, the ALJ found that this ability to perform activities for up to 8 hours at a time was inconsistent with the need for additional breaks. (Tr. 1235).

Plaintiff claims the ALJ erroneously rejected Dr. Rowlands opinion regarding his need to take short breaks and argues, *inter alia,* other than declaring that Dr. Rowland's opinions were not supported by the record; (Tr. 1237) the ALJ did not provide any citations to the record to support that conclusion. The ALJ merely stated that the evidence was substantially normal or relatively normal and that there were no significant limitations noted in the treatment record. As such, Plaintiff contends that the ALJ failed to engage in any sort of analysis regarding the consistency between Dr. Rowland's opinions and the rest of the record.

The Commissioner, however, contends that the ALJ need not use the magic words of "supportability" or "consistency," or provide a certain level of detail in her analysis of the opinion evidence, to show that she considered these factors. *See Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (finding that an agency need not "follow a particular formula or incant 'magic words'" for its decision to be upheld by a reviewing court); *Andrew E. v. Comm'r of Soc. Sec.*, 2025 WL 724606, at *4 (S.D. Ohio Mar. 6, 2025) (holding that neither a particular length of analysis nor specific "magic words" are required and the appropriate level of articulation with respect to the analysis of an opinion depends on the unique circumstances of each claim); *Chad T. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4355001, at *8 (S.D. Ohio Sept. 20, 2022) ("the regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail." Instead, "the appropriate level of

9

articulation will necessarily depend on the unique circumstances of each claim." ) (quoting Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854, 2017 WL 168819 (Jan. 18, 2017) (to be codified at 20 C.F.R. §§ 404.1520c and 416.920c)).

Thus, as long as the ALJ's decision, when read as a whole, shows that she substantively considered the supportability and consistency factors, the ALJ's decision must be affirmed. *See Dunlavy v. Comm'r of Soc. Sec.*, No. 24-3333, 2024 WL 4558606, at *3 (6th Cir. Oct. 23, 2024) (The ALJ evaluated the psychologists' opinion in the same section of her decision in which she discussed the inconsistencies in the record. That is enough to 'connect the dots.') (citations omitted).

In this regard, with respect to supportability, the Commissioner contends that the ALJ detailed Dr. Rowland's concerns about malingering and feigning impairments and examination deficits multiple times in her decision. (Tr. 1233, 1235, 1239). Specifically, the ALJ considered Dr. Rowland's notations that Plaintiff was aloof with a restricted range and indifferent affect, but also had adequate personal hygiene and grooming, had appropriate eye contact, was generally cooperative without disorientation, sat calmly, showed no bizarre or abnormal behaviors (such as outward indications of restlessness, psychomotor retardation, or psychomotor agitation), had clear speech, and had intact thought processes that were clear, organized, and goal-directed.  (See Tr. 1233, citing Tr. 799-801). The ALJ also considered Dr. Rowland's notation wherein Plaintiff reported depressed mood, but also reported that there were periods of time when he was not depressed and experienced variation in energy and sleep. (Tr. 1233, citing Tr. 800).

The ALJ noted that Plaintiff reported hallucinations, yet Dr. Rowland noted that Plaintiff was unable to provide details of the hallucinations and thus, Dr. Rowland deemed

10

the hallucinations non authentic, finding it was likely he was malingering his mental illness. (Tr. 1233; citing Tr. 800). Furthermore, as noted by the Commissioner, the ALJ also considered that Dr. Rowland reported that Plaintiff exhibited intact mental functioning, yet he was observed to malinger deficits to his recent and immediate memory, his attention and concentration were intact, and his remote and working memories were intact. (Tr. 1233, citing Tr. 802). The ALJ finally considered Dr. Rowland's statement that Plaintiff feigned impairments and feigned deficits, her observation that Plaintiff was fabricating symptomology for external gain, and her assessment of malingering (Tr. 1233, citing Tr. 802- 803).

In light of the foregoing, the Commissioner contends that the ALJ's consideration of the mostly normal examination findings in Dr. Rowland's report and her observations of malingering and feigning impairments and symptoms goes directly to the supportability of Dr. Rowlands's opinions. See 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) (discussing supportability).  The undersigned agrees.

Plaintiff however, contends that while Dr. Rowland's findings included references to Plaintiff's adequate personal hygiene, appropriate eye contact, his ability to be calm and cooperative, his lack of restlessness or psychomotor retardation, clear speech, intact attention and concentration, intact immediate memory, and intact thought processes; Dr Rowland also described Plaintiff as aloof with a restricted range and indifferent affect, as well as a depressed mood, decreased energy, and hallucinations. (Doc. 12 at 2-3).  Dr. Rowland's report also documented issues with mood swings, anger, and difficulty dealing with others. As such, Plaintiff argues that "the evidence clearly cuts both ways" as Dr.

11

Rowland's report contains normal and abnormal findings. Id. at 3. Plaintiff's contentions fail to show any error by the ALJ.

It is well established that it is the duty of the ALJ to resolve any conflict among the evidence and weigh the medical source opinions. See *Mullins v. Secy. of Health and Human Servs.*, 836 F.2d 980, 984 (6th Cir.1987). Where, as here, there is a conflict in the medical evidence as to plaintiff's functioning, it is the ALJ's function to resolve such conflicts. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994); Hardaway v. Secretary of H.H.S., 823 F.2d 922, 928 (6th Cir.1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir.1984). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983). See also Boyle v. Sullivan, 998 F.2d 342, 347 (6th Cir.1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir.1990). Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform work related activities. As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence.

With respect to consistency, the ALJ addressed this factor during his evaluation of Dr. Rowland's findings as well as throughout his decision.  Namely, the ALJ determined that Dr. Rowland's opinion, relating to short breaks was not persuasive because it was "vague, contingent, and speculative in nature" (Tr. 1237). The ALJ also explained that the statement was "not supported by the overall record given the substantially normal or relatively normal mental status findings in treatment notes and no significant limitations noted in participating in mental health treatment." (Tr. 1237).

12

Plaintiff contends, however, that ALJ did not provide any citations to the record to support his conclusion that the opinion was inconsistent with the substantially normal or relatively normal mental status findings in the treatment notes.  In response, the Commissioner notes that Plaintiff cited no authority in support of the requirement of specific record citations.  Notably, here, the ALJ discussed the examination findings, in extensive detail, with citations to the record. (Tr. 1230-1234) and identified inconsistencies in the record regarding mental health symptoms, just prior to addressing the opinion (Tr. 1235-1237). More importantly, with respect to the limitation of short breaks, the Commissioner noted that the ALJ identified multiple examinations with citations to the record, that showed that Plaintiff had logical cognition, had clear, coherent, and intact thought processes, was alert and oriented, and exhibited appropriate and intact attention and concentration. (Tr. 1230-1234, citing Tr. 503, 709, 802, 962-963, 965, 976, 1049, 1154).  Additionally, the ALJ limited Plaintiff to simple, routine, repetitive tasks; by limiting him to work in an environment with goal-based production, where work was measured by the end result not pace; and by allowing him to be off task 5 percent of the workday (Tr. 1224-1225).  In light of the foregoing, the undesigned finds that the ALJ's decision is substantially supported in this regard.

While Plaintiff may disagree with the ALJ's assessment of the medical opinion evidence, he has failed to demonstrate any factual or legal error. Instead, he simply asks this Court to reweigh the evidence in order to reach a different conclusion. But the only issue for this Court is whether the Commissioner's decision is substantially supported. *See Walters v. Com'r of Soc. Sec.*, 127 F.3d at 528 (acknowledging that it is not a court's role to resolve conflicts in the evidence). A court may not reverse even if there is

13

substantial evidence to support an alternative conclusion, so long as the ALJ's analysis falls within a "zone of choice." That standard is met here. *See generally*, *Biestek v. Berryhill*, 139 S. Ct. 1148,1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). Here, substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

> *s/ Stephanie K. Bowman*
> Stephanie K. Bowman
> United States Chief Magistrate Judge

14

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**


JAMES C.                                        Case No. 2:25-cv-231

                    Plaintiff,

        v.                                      Graham, J.
                                                Bowman, M.J.


COMMISSIONER OF SOCIAL SECURITY,

                    Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).